Docket No. 97165.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* APPLICATION OF THE COUNTY COLLECTOR for Judgment and Sale Against Lands and Lots Returned Delinquent for Nonpayment of General Taxes and/or Special Assessments for the Years 1991 and Prior Years (Apex Tax Investments, Inc., *et al.*, Appellees, v. Mary Lowe, Deceased, by Patrick T. Murphy, Cook County Public Guardian and Supervised Adm'r of the Estate of Mary Lowe, Appellant).

*Opinion filed April 19, 2007.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Freeman, Fitzgerald, and Garman concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion.

Justices Karmeier and Burke took no part in the decision.

## OPINION

This cause is before us on remand from the United States Supreme Court for further consideration in light of *Jones v. Flowers*, 547 U.S. ___, 164 L. Ed. 2d 415, 126 S. Ct. 1708 (2006). We have allowed additional briefing and oral argument addressing the Supreme Court's decision in *Jones*. We also have permitted the

Mental Health Association in Illinois and the Mental Health Project of the University of Chicago Law School's Edwin F. Mandel Legal Aid Clinic to file a brief *amici curiae* on behalf of the Cook County public guardian, as supervised administrator for the estate of Mary Lowe. In addition, we have permitted the Illinois Tax Purchasers Association to file a brief *amicus curiae* on behalf of Apex Tax Investments, Inc., and its subsequent transferee and claimed beneficial interest holder, John Herndon.

The facts in this case are set forth in the original opinion of this court (*In re Application of the County Collector*, 217 Ill. 2d 1 (2005)). We repeat those facts in some detail in this opinion, as those facts are relevant to our reconsideration in light of *Jones*.

## BACKGROUND

In 1977, Mary Lowe purchased a single-family home located at 13250 South Riverdale in Chicago. In 1993, Lowe quitclaimed the property to herself and William Austin. Austin died in 1994. Property taxes were paid on the home until 1992, when $110.65 in assessed taxes for the 1991 property tax year went unpaid.

Once property taxes become delinquent, the Property Tax Code (the Code) (35 ILCS 200/1–1 *et seq.* (West 1994)) provides that the county collector may file an application in the circuit court for judgment and order of sale of the delinquent property. The Code directs that the county collector shall publish notice of its intent to file an application for judgment. 35 ILCS 200/21–110 (West 1994). The notice must be published in a newspaper in the township where the property is located at least 10 days before the application is filed. 35 ILCS 200/21–115 (West 1994). In addition, the county collector shall send a notice of the application for judgment and sale, by certified or registered mail, to the person in whose name the taxes were last assessed at least 15 days before the date of the application for judgment and sale of the delinquent property. 35 ILCS 200/21–135 (West 1994). The county collector must present proof of the mailing to the court along with the application for judgment. 35 ILCS 200/21–135 (West 1994). The property owner can pay the delinquent taxes and costs any time prior to the sale. 35 ILCS 200/21–165 (West 1994). If judgment is entered against the property, the county

collector shall offer the property for sale pursuant to the judgment. 35 ILCS 200/21–190 (West 1994).

Following a tax sale, the Code provides that, in order to seek a tax deed, the tax purchaser must deliver a notice to the county clerk to be given to the party in whose name the taxes were last assessed. 35 ILCS 200/22–5 (West 1994). This notice must be delivered to the county clerk within five months after the tax sale, and the county clerk must mail the notice, within 10 days of receipt, by registered or certified mail. 35 ILCS 200/22–5 (West 1994). This section 22–5 "Take Notice" advises a party that his property has been sold for delinquent taxes, that redemption can be made until a specified date, and that a petition for tax deed will be filed by the tax purchaser if redemption is not made. 35 ILCS 200/22–5 (West 1994).

The Code provides for a second "Take Notice" to be sent to the owners, occupants and parties interested in the delinquent property not less than three months or more than five months prior to the expiration of the period of redemption. 35 ILCS 200/22–10 (West 1994). This section 22–10 take notice must give notice of the sale and the date of expiration of the period of redemption. 35 ILCS 200/22–10 (West 1994). The section 22–10 take notice must be served: personally by the sheriff; by registered or certified mail, return receipt requested; and by three publications in a newspaper. 35 ILCS 200/22–15, 22–20, 22–25 (West 1994).

Also "within 5 months but not less than 3 months prior to the expiration of the redemption period," the tax purchaser may file a petition in the circuit court seeking an order directing the county clerk to issue a tax deed to the property. See 35 ILCS 200/22–30 (West 1994). In order to receive an order issuing a tax deed, the redemption period must expire without any redemption taking place, and the tax purchaser must prove to the circuit court that it has strictly complied with the statutory notice provisions set forth in sections 22–10 through 22–25 of the Code (35 ILCS 200/22–10 through 22–25 (West 1994)). 35 ILCS 200/22–30 (West 1994).

In this case, the circuit court granted the collector's application for judgment and sale. The county collector offered Lowe's home for sale and, on March 3, 1993, Apex Tax Investments, Inc. (Apex), purchased the home at the annual Cook County tax sale for $347.61, the amount of the 1991 tax delinquency and fees. Apex did not

receive title to the property at that time, but instead received a "certificate of purchase." See 35 ILCS 200/21–250 (West 1994). The certificate of purchase did not affect Lowe's legal or equitable title to the property. In addition, Lowe had the right to redeem the property, upon payment of the tax arrearage and costs, until the redemption period expired. See 35 ILCS 200/21–345 through 21–355 (West 1994).

On October 5, 1995, Apex filed a petition in the circuit court of Cook County for a tax deed to the property. Apex's tax petition stated that the redemption period expired by extension on February 21, 1996. Because no redemption occurred by February 21, 1996, Apex's petition proceeded to an *ex parte* hearing on March 18, 1996.

At the March 18, 1996, hearing, Apex's attorney testified concerning Apex's compliance with the statutory notice provisions of sections 22–10 through 22–25 of the Code. Apex conducted a tract search and learned that the property at issue was owned by Mary Lowe and William Austin. Apex conveyed this information to the Cook County sheriff and the clerk of the circuit court of Cook County. Pursuant to section 22–15 of the Code (35 ILCS 200/22–15 (West 1994)), the Cook County sheriff attempted to personally serve Lowe, Austin and "occupant" with the section 22–10 "take notice" on October 26, 1995. The Cook County sheriff filed the returns of service for the section 22–10 take notices with the clerk of the circuit court on November 9, 1995. On each return of service, the deputy sheriff wrote "House vacant per neighbors." In addition, the deputy sheriff wrote the word "MOVED" on the preprinted form to indicate the reason why notice was not served.

Because the Cook County sheriff could not effect personal service on Austin, Lowe or "occupant," the sheriff also sent section 22–10 take notices to Austin, Lowe and "occupant" at the property's address by certified mail, return receipt requested. The three certified mail notices were returned to the sheriff undelivered, and were filed with the clerk of the circuit court.

The envelopes for the three certified mail notices were admitted into evidence at the hearing on Apex's petition for a tax deed. All three envelopes were postmarked November 8, 1995, and were stamped "return to sender." On the envelope addressed to Austin, the word "deceased" was handwritten in pencil on the left side of the

envelope. The envelopes addressed to Lowe and "occupant" contained stamps indicating that attempts were made to deliver the notices on November 16, December 11, and December 18, 1995. In addition, the two envelopes addressed to Lowe and "occupant" contained a handwritten notation written vertically on the left side of the envelope which read, "Person is Hospitalized." Under that notation, the number "2719" and the letters "JHT" were handwritten. The handwritten notations on the envelopes have a line drawn through them and are obscured in part by the circuit court clerk's filing stamp and the post office's "return to sender" stamps. The sheriff filed the returned certified mail notice for Austin with the court on November 22, 1995, and filed the returned certified mail notices for Lowe and "occupant" with the court on January 2, 1996.

Pursuant to statute, the clerk of the circuit court of Cook County also sent section 22–10 take notices by certified mail to Lowe, Austin and "occupant." These notices were returned undelivered. The three certified mail envelopes were postmarked November 8, 1995, and were stamped "return to sender." The three envelopes contained notations indicating that attempts were made to deliver the notices on November 9, November 15, and November 24, 1995. Apex also provided publication notice to Lowe and Austin by publishing notice in the Chicago Daily Law Bulletin on October 11, October 12, and October 13, 1995.

At the hearing on Apex's petition for tax deed, Apex's attorney testified that, in attempting to ascertain the whereabouts of Lowe and Austin, the Cook County sheriff personally served a section 22–10 take notice on the law firm that prepared the 1993 quitclaim deed on behalf of Lowe. The clerk of the circuit court also sent notice to the law firm by certified mail on November 8, 1995. Moreover, the First National Bank of Chicago, in its capacity as a mortgagee of the property, was personally served with a section 22–10 take notice on October 24, 1995. Likewise, the clerk of the circuit court sent notice by certified mail to the bank on November 8, 1995.

Apex's agent, Fred Berke, testified at the hearing that he had visited the property and inspected it on behalf of Apex sometime between October 21 and December 21, 1995. When Berke arrived at the home, he knocked on the door and looked into the living room window. Berke did not see any furniture inside the home. In addition,

Berke spoke to a next-door neighbor who told Berke that the owner of the property was the "Lowes," but that no one was living there currently. Berke testified that the home appeared to be uninhabited.

Apex's attorney also testified that Apex checked city and suburban phone directories and voter registration records, but was unable to develop any address for William Austin or Mary Lowe other than the subject property address. Apex's attorney stated that all regular efforts to locate Lowe and Austin had proven fruitless.

At the close of the hearing on Apex's petition for tax deed, the circuit court found that no redemption had been made, that Apex had complied with the notice provisions of the Property Tax Code, and that Apex had exercised "due diligence" in attempting to locate Lowe and Austin. Consequently, on May 20, 1996, the circuit court directed the county clerk to issue Apex a tax deed to the property. The tax deed was issued on May 20, 1996.

Subsequently, on December 6, 1996, Apex entered into an installment contract to sell the property to third-party John Herndon for $10,000. Herndon testified via deposition that the property was in substantial disrepair when he purchased it, describing the home as an abandoned building. Herndon invested more than $20,000 in material and labor in renovating the property, completing the renovations by early 1998.

On September 5, 1997, two of Mary Lowe's sons, Bruce and Mario Lowe, filed a *pro se* petition for "Restoration of Property Ownership" in the circuit court of Cook County, stating that Mary Lowe had been in and out of various mental facilities for the past 30 years and that Lowe had been hospitalized in a mental-health facility from August 26, 1995, to December 17, 1996. The petition stated that Mary Lowe had been released to Bruce Lowe's custody and that Mary currently resided with Bruce in California. The *pro se* petition alleged that personal service on an incompetent person violates that person's right to due process. The petition therefore asked that the court reinstate Mary's full rights of ownership in the subject property.

Based upon the allegation that Mary Lowe was mentally disabled, the circuit court on November 1997 appointed the Cook County

public guardian to represent her.[1] The public guardian then filed a petition, and later an amended petition, pursuant to section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 1994)) and section 22–45 of the Code (35 ILCS 200/22–45 (West 1994)), seeking to have the tax deed that was issued to Apex set aside. The public guardian alleged the Mary Lowe suffered from schizophrenia and had been hospitalized at the Tinley Park Mental Health Center at the time the section 22–10 notices were sent to the property in November 1995. The public guardian also noted that two of the notices mailed by the Cook County sheriff were returned with the notation "Person is hospitalized 2719 JHT" written on the envelopes. The public guardian alleged that the notations were written by mail carrier Jewel Hightower. The number 2719 was Hightower's postal route numbers and the letters "JHT" were Hightower's initials. The public guardian contended that Apex failed to make diligent inquiry concerning the whereabouts of Mary Lowe because Apex never attempted to contact Hightower or the post office.

An evidentiary hearing on the public guardian's amended petition to set aside the tax deed was held on February 20, 2002. The circuit court allowed Herndon to participate at the hearing because he had purchased the subject property. Dr. Bernard Rubin testified at the hearing that he had reviewed Lowe's mental-health records and concluded that Lowe had suffered from disorganized, chronic schizophrenic disorder. Rubin said that from January 1995 until October 1996, Lowe suffered from a mental illness, was generally incompetent, and would not have been able to understand or respond to legal documents served upon her between January 1995 and October 1996.

Hightower also testified at the evidentiary hearing that she was a mail carrier for the United States Postal Service and that the property at issue was on her route. She wrote "Person is Hospitalized" on the certified letters sent by the sheriff to Lowe and occupant. Hightower

---

[1]Mary Lowe died on November 15, 1998. The probate division of the circuit court of Cook County entered an order appointing the public guardian as administrator to collect for the estate of Lowe, and the public guardian, as administrator to the estate of Mary Lowe, was substituted as the proper party to prosecute the amended petition to set aside the tax deed.

also wrote her postal route number, "2719," and her initials, "JHT," on the envelopes. At the time she made the notations on the envelopes, Hightower knew that Lowe was in Tinley Park Mental Health Center, but postal regulations did not allow her to note anything more specific than the fact that an addressee was hospitalized. Hightower testified that anyone wanting further information concerning Lowe's whereabouts could have come to the post office and filled out the proper forms, although Hightower did not further explain what forms would authorize disclosure that a person was hospitalized in a mental-health facility.

On April 9, 2002, the circuit court denied the public guardian's amended petition to set aside the tax deed. The appellate court affirmed. No. 1–02–1101 (2003) (unpublished order under Supreme Court Rule 23). This court granted the public guardian's petition for leave to appeal and affirmed the circuit and appellate courts.

In affirming, this court noted that relief from an order issuing a tax deed could be had under section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 1994)), but that the grounds for relief were limited as set forth in section 22–45 of the Code (35 ILCS 200/22–45 (West 1994)). *In re Application of the County Collector*, 217 Ill. 2d at 25-26. These grounds are limited to: (1) proof that the taxes were paid prior to the sale; (2) proof that the property was exempt from taxation; (3) proof by clear and convincing evidence that the tax deed was procured by fraud or deception; or (4) proof by a person or party holding a recorded ownership or other interest in the property that he was not named as a party in the section 22–20 publication notice and that the tax purchaser did not make a diligent inquiry and effort to serve that person or party with the notices required pursuant to sections 22–10 through 22–30. 35 ILCS 200/22–45 (West 1994).

The public guardian argued that the tax deed issued to Apex should be set aside because there was clear and convincing evidence that Apex had procured the tax deed by fraud or deception. *In re Application of the County Collector*, 217 Ill. 2d at 26. The public guardian claimed that Apex's representation that it had been unable to ascertain Lowe's whereabouts despite having conducted a diligent search constituted fraud or deception in light of " 'Apex's willful ignorance with respect to the notations [from Hightower] on the

undelivered envelopes.' " *In re Application of the County Collector*, 217 Ill. 2d at 23.

This court rejected the public guardian's argument, noting that in the context of tax deed proceedings, fraud is defined as a wrongful intent or an act calculated to deceive. *In re Application of the County Collector*, 217 Ill. 2d at 23. This court held that the record in the case did not show fraud. Specifically, this court found that:

> "The envelopes with Jewel Hightower's notations on them were returned by the post office to their sender, the Cook County sheriff. The sheriff submitted the envelopes to the clerk of the circuit court, who then placed the envelopes in the court file, which, by statute, the clerk is required to maintain in tax deed cases. [Citation.] There was nothing unusual or unexpected about the fact that the envelopes were returned, undelivered. Both an agent from Apex and a deputy sheriff from the Cook County sheriff's office had visited the property, found it vacant, and had been told by neighbors that the occupants of the home had moved. Further, the notations on the envelopes addressed to Mary Lowe and 'occupant,' though legible, cannot reasonably be called prominent. The notations have a line drawn through them and they are partially obscured by the circuit court clerk's filing stamps and the post office's 'returned to sender' stamps. More important, there is no evidence that Apex attempted to conceal the notations or alter the envelopes in any way. ***

> On this record, the most that can be said with respect to Apex's actions is that Apex simply failed to discover the notations on the envelopes. However, as this court has frequently noted, the failure to uncover a particular fact during the search for a delinquent taxpayer does not, by itself, establish fraud." *In re Application of the County Collector*, 217 Ill. 2d at 23-24.

This court also rejected the public guardian's claim that the tax deed should be set aside because Lowe had been denied her due process right to adequate notice prior to the deprivation of her property. This court concluded that the public guardian was attempting to relitigate the circuit court's diligent-inquiry finding–a finding that could not be challenged in a section 2–1401 petition

-9-

except on the grounds set forth in section 22–45 of the Code. *In re Application of the County Collector*, 217 Ill. 2d at 37-38. Because this court had already concluded that fraud under section 22–45 had not been proven, this court declined to further consider the public guardian's argument that Apex failed to conduct a diligent inquiry to locate Lowe. *In re Application of the County Collector*, 217 Ill. 2d at 38.

Finally, this court rejected the public guardian's argument that the Code is unconstitutional as applied to all individuals like Lowe, who are hospitalized with a disabling mental illness during the section 22–10 notice period. *In re Application of the County Collector*, 217 Ill. 2d at 38. We held that the notice procedures set forth in sections 22–10 through 22–25 of the Code embodied all that could be done under existing law to locate and identify a delinquent taxpayer who is hospitalized for mental illness. *In re Application of the County Collector*, 217 Ill. 2d at 41-42.

The United States Supreme Court subsequently granted the public guardian's petition for writ of *certiorari*, vacated the judgment of this court, and remanded the cause for our further consideration in light of *Jones v. Flowers*, 547 U.S. ___, 164 L. Ed. 2d 415, 126 S. Ct. 1708 (2006). *Estate of Lowe v. Apex Tax Investments, Inc.*, 547 U.S. ___, 164 L. Ed. 2d 811, 126 S. Ct. 2287 (2006).

ANALYSIS

We begin our analysis on reconsideration with a review of the *Jones* decision. At issue in *Jones* was whether the government must take additional reasonable steps to provide notice before taking an owner's property when the notice of tax sale that was mailed to the owner is returned undelivered. *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713.

In that case, Gary Jones purchased a home on Bryan Street in Little Rock, Arkansas, in 1967 and lived in the Bryan Street home with his wife until they separated in 1993. Jones then moved into an apartment in Little Rock and his wife remained in the Bryan Street home. Jones continued to pay the mortgage on the Bryan Street home after he moved out, and the mortgage company paid Jones' property taxes. After the mortgage was paid off in 1997, the property taxes

-10-

went unpaid and the property was certified as delinquent. *Jones*, 547 U.S. at \_\_\_, 164 L. Ed. 2d at 424, 126 S. Ct. at 1712.

In April 2000, the Commissioner of State Lands mailed a certified letter to Jones at the Bryan Street home notifying Jones of the tax delinquency and of his right to redeem the property. The letter also stated that unless Jones redeemed the property, the property would be subject to a public sale two years later on April 17, 2002. The post office returned the certified letter to the Commissioner marked "unclaimed" because no one was home to sign for the letter and no one retrieved the letter from the post office within the next 15 days. *Jones*, 547 U.S. at \_\_\_, 164 L. Ed. 2d at 424, 126 S. Ct. at 1712.

Two years later, the Commissioner published a notice of public sale in the newspaper. No bids were submitted, so the State was permitted to negotiate a private sale of the property. Thereafter, Linda Flowers submitted a purchase offer. Accordingly, the Commissioner mailed another certified letter to Jones at the Bryan Street address notifying Jones that his house would be sold to Flowers if he did not pay his taxes. This letter was returned to the Commissioner marked "unclaimed." Flowers then purchased the house and, after the 30-day period for postsale redemption had passed, Flowers had an unlawful-detainer notice delivered to the property. The unlawful-detainer notice was served on Jones' daughter. Jones' daughter then told Jones about the tax sale. *Jones*, 547 U.S. at \_\_\_, 164 L. Ed. 2d at 424, 126 S. Ct. at 1712-13.

Jones filed suit in state court against the Commissioner and Flowers alleging that the Commissioner's failure to provide notice of the tax sale and of Jones' right to redeem resulted in the taking of Jones' property without due process. The trial court granted summary judgment in favor of the Commissioner and Flowers, finding that the state tax sale statute that set forth the notice procedure complied with constitutional due process requirements. The Arkansas Supreme Court affirmed, finding that attempting to provide notice by certified mail satisfied due process under the circumstances. *Jones*, 547 U.S. at \_\_\_, 164 L. Ed. 2d at 424-25, 126 S. Ct. at 1713.

Before the Supreme Court, the Commissioner argued that due process was satisfied once the state provided notice reasonably calculated to apprise Jones of the impending tax sale by mailing Jones a certified letter. *Jones*, 547 U.S. at \_\_\_, 164 L. Ed. 2d at 425, 126 S.

Ct. at 1714. The Supreme Court agreed that it had deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent. *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 426, 126 S. Ct. at 1714. However, the Court stated that it had never addressed whether due process required further responsibility when the government becomes aware, prior to the taking, that its attempt at notice failed. *Jones*, 547 U.S. at 426, 164 L. Ed. 2d at 426, 126 S. Ct. at 1714.

The Court explained that it did not "think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed." *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 427, 126 S. Ct. at 1716. Consequently, the State of Arkansas' decision to take no further action when the notice to Jones was returned unclaimed was "not what someone 'desirous of actually informing' Jones would do; such a person would take further reasonable steps if any were available." *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 428, 126 S. Ct. at 1716. The Court held that upon receiving the returned form suggesting that Jones had not received notice that his property was about to be sold, the "State should have taken additional reasonable steps to notify Jones, if practicable to do so." *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 430, 126 S. Ct. at 1718.

The Court explained that there were several reasonable steps the state could have taken when the certified letter to Jones was returned unclaimed. For example, the state could have resent the notice by regular mail so that a signature was not required. *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 431, 126 S. Ct. at 1718-19. In addition, the state could have posted notice on the front door of the house or could have addressed the mail to "occupant." *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 431, 126 S. Ct. at 1719. Further, the Court found that the state's attempt to follow up with Jones by publishing notice in the newspaper was not constitutionally adequate under the circumstances of the case because it was possible and practicable to give Jones more adequate warning of the impending tax sale. *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 433, 126 S. Ct. at 1720.

The Court rejected Jones' claim, however, that the Commissioner should have looked for his new address in the Little Rock phonebook and other government records, including income tax rolls. *Jones*, 547

U.S. at \_\_\_, 164 L. Ed. 2d at 431-32, 126 S. Ct. at 1719. The Court stated that an "open-ended search for a new address–especially when the State obligates the taxpayer to keep his address updated with the tax collector [citation]–imposes burdens on the State significantly greater than the several relatively easy options outlined above." *Jones*, 547 U.S. at \_\_\_, 164 L. Ed. 2d at 432, 126 S. Ct. at 1719.

The Court declined to prescribe the form of service that the state should adopt, concluding that the state could determine how to proceed in response to the Court's conclusion that notice was inadequate under the facts of this particular case. *Jones*, 547 U.S. at \_\_\_, 164 L. Ed. 2d at 433, 126 S. Ct. at 1721. Because notice in the case before it was insufficient to satisfy due process, the Supreme Court reversed the Arkansas state courts, holding that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Jones*, 547 U.S. at \_\_\_, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713.

In reconsidering this case in light of *Jones*, we first note that this case is factually distinguishable from *Jones*. The notice provided pursuant to the Illinois Property Tax Code is far more comprehensive than the notice provided for in the Arkansas statute at issue in *Jones*. The Arkansas statute required the state to send only one notice, by certified mail, to a property owner notifying him of the government's intent to sell his property for delinquent taxes. In contrast, the Illinois statute provides that the county collector must provide notice to a delinquent taxpayer by certified or registered mail before obtaining a judgment order from the circuit court authorizing the sale of the property. 35 ILCS 200/21–110, 21–115, 21–135 (West 1994). In addition, after the court has ordered the sale of the property and the property has been sold to a tax purchaser, the county clerk must notify the delinquent taxpayer by certified or registered mail that the property has been sold and that the taxpayer may redeem the property by paying the tax arrearage on or before a specified date. 35 ILCS 200/22–5 (West 1994). Finally, a tax purchaser seeking to obtain a tax deed also must send the delinquent taxpayer notice of the sale and the expiration of the redemption period.

*Jones* is further distinguishable because the issue in that case concerned the notice a state must provide to a property owner *before*

taking his property. The *Jones* court characterized the issue before it as "whether the Due Process Clause requires the government to take additional reasonable steps to notify a property owner when *notice of a tax sale* is returned undelivered," and held that "when mailed *notice of a tax sale* is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner *before selling his property*, if it is practicable to do so." (Emphases added.) *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713. In holding that the state must take additional reasonable steps to attempt to provide notice, the Supreme Court stated that it did "not think that a person who actually desired to inform a real property owner *of an impending tax sale* of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed." (Emphasis added.) *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 427, 126 S. Ct. at 1716.

In this case, in contrast, there is no issue concerning notice of the tax sale. As we observed in our original opinion:

> "In the case at bar, it is undisputed that Mary Lowe was mentally incapacitated from January 1995 through October 1996. However, the tax sale in this case, and the time periods for the procedures noted above, occurred in 1993. The circuit court made no finding regarding the competency, or incompetency, of Mary Lowe in 1993. Moreover, while Dr. Rubin testified as to Lowe's incapacity in 1995 and 1996, he did not testify with respect to her condition in 1993. Thus, it appears that, *prior to the deprivation of her property*, and at a time when there is no finding of record that she was incompetent, Lowe was given notice of the application for judgment and order of tax sale, had an opportunity to object to the application for judgment, was given notice that the tax sale had occurred, and was given notice that she had the right to redeem her property." (Emphasis added.) *In re Application of the County Collector*, 217 Ill. 2d at 31.

Because there is no issue in this case concerning whether Lowe was given notice of the tax sale, we find that the due process concerns in *Jones* are not at issue in this case and, therefore, that *Jones* does not require this court to reverse its prior opinion.

-14-

The public guardian argues, however, that because the lack of notice in this case concerns the hearing at which Lowe actually lost the title to her home, Lowe was denied due process even if she may have received some earlier notice. The public guardian contends that the notice given to Lowe in this case was deficient because Apex failed to follow up on specific information that would have led to the discovery of Lowe's whereabouts and, even absent that specific information, Apex failed to make a diligent inquiry into finding Lowe.

The public guardian notes that in *Jones*, the certified mail notices were returned marked "unclaimed." In this case, not only were the section 22–10 certified mail notices to Lowe and "occupant" returned unclaimed, but the envelopes also contained a notation from the letter carrier that "Person is Hospitalized" along with the letter carrier's initials and postal route number. The public guardian argues that *Jones* directly addressed this type of situation and held that due process requires a party to follow up on information provided in response to its chosen method of service.

The public guardian maintains that Hightower's notation on the envelopes in this case put Apex on notice that Lowe was not at the property where notice was sent, was not receiving mail at that address, and was hospitalized. In addition, the notation on the envelopes indicated that Apex could follow up with Hightower to find out where Lowe was hospitalized in order to provide Lowe with actual notice. Further, had Apex followed up with Hightower, Apex would have learned that Lowe was hospitalized in a state mental institution and that she was incompetent. The public guardian asserts that Apex had a constitutional duty under *Jones* to inspect the returned envelopes and take reasonable steps in response to any information that it discovered as a result.

Even if we were to accept the public guardian's argument that *Jones* applies in this case to the section 22–10 take notice, we nonetheless find our prior opinion to be consistent with *Jones*. The gravamen of the public guardian's argument is that, under *Jones*, Hightower's notations on the envelopes provided additional information to Apex that required Apex to take additional reasonable steps in an attempt to provide constitutionally sufficient notice to Lowe. We disagree.

-15-

As discussed, the Supreme Court in *Jones* observed that the state did nothing for two years after its notice to Jones was returned unclaimed. The Supreme Court held that the state could have taken additional reasonable steps to notify Jones that he was about to lose his property, such as resending the notice by regular mail, posting notice on the front door, or addressing the mail to "occupant."

In this case, Apex did take numerous additional steps to notify Lowe that her property had been sold and that a petition for tax deed had been filed. Apex conducted a tract search of the property to determine the owner of the property. The Cook County sheriff attempted to personally serve Lowe, Austin and "occupant," but determined that the home was vacant. The Cook County sheriff also sent the section 22–10 take notice by certified mail addressed to Lowe, Austin and "occupant." The clerk of the circuit court likewise attempted to serve Lowe, Austin and "occupant" with the section 22–10 take notice by certified mail, return receipt requested.

Apex also served the section 22–10 take notice on the law firm that prepared the quit claim deed in 1993, and on the mortgagee of the property. Apex's agent, Berke, visited the property and spoke with a neighbor, who told Berke that the "Lowes" owned the property, but no one currently lived there. Moreover, Apex checked city and suburban phone directories and voter registration records in order to find another address for Lowe and Austin.

It is clear that the steps taken by Apex exceeded those suggested by the *Jones* Court as reasonable. In fact, the *Jones* Court stated that the state was not required to search for Jones' new address in the Little Rock phone book or in other government records, explaining that "[a]n open-ended search for a new address–especially when the State obligates the taxpayer to keep his address updated with the tax collector [citation]–imposes burdens on the State significantly greater than the several relatively easy options outlined above." *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 432, 126 S. Ct. at 1719.

In light of the foregoing, it is clear in this case that Apex's attempts at notice in this case were sufficient to satisfy due process under *Jones*. We are not convinced that, under the circumstances of this case, Apex was required to take additional steps in response to Hightower's notations on the certified mail envelopes. We cannot consider the envelopes containing Hightower's notations in isolation,

-16-

but instead must consider the envelopes in light of all the facts in this case.

Prior to receiving the envelope with the notation that "Person is Hospitalized," the Cook County sheriff filed returns of service indicating that the property was vacant and that Lowe had moved. This information was confirmed by Apex's agent based upon his own observation and his discussion with Lowe's neighbor. Apex also knew that Lowe had not responded to the county collector's initial notice of sale or the section 22–5 notice. Given the apparently accurate information suggesting that Lowe had moved, which conflicted with the notation that "Person is Hospitalized," we cannot say that Apex had a duty to further determine whether, in fact, Lowe was hospitalized, where Lowe was hospitalized, and why Lowe was hospitalized. We believe that such an open-ended search would impose a significantly greater burden than required under *Jones*.

Moreover, we are not as confident as the public guardian that any further inquiry would have revealed that Lowe was hospitalized at the Tinley Park Mental Health Center. As the appellate court found:

> "[T]he notation 'person is hospitalized' does not necessarily mean the individual is hospitalized in a mental health center. As the trial court indicated, individuals are hospitalized for numerous reasons. Hospitalization at a mental health center would not first come to mind when learning that a 'person is hospitalized.' " No. 1–02–1101 (unpublished order under Supreme Court Rule 23).

In addition, as noted in our prior opinion, section 3(a) of the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/3(a) (West 2000)) does not permit hospitals to disclose to tax purchasers the fact that an individual is a recipient of mental health services. *In re Application of the County Collector*, 217 Ill. 2d at 41. Likewise, Hightower did not explain what postal forms would have authorized disclosure that Lowe was hospitalized in the Tinley Park Mental Health Center.

Accordingly, we do not agree with the public guardian that, had Apex followed up on Hightower's notation, Apex would have discovered where Lowe was hospitalized and that Lowe was mentally incompetent. As the Supreme Court recognized, "[w]hat steps are

reasonable in response to new information depends upon what the new information reveals," and if there are "no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 430-31, 126 S. Ct. at 1718.

The public guardian next argues that, even absent the information provided by Hightower, Apex failed to undertake an inquiry expected of one seeking to inform Lowe of the proceedings against her. The public guardian asserts that Apex's agent, Berke, could have questioned Lowe's neighbor further concerning her whereabouts or could have questioned other neighbors for information on Lowe. Berke also could have posted information on the property, which likely would have elicited further information.

Again, given the information available to Berke, we do not agree that *Jones* would require Berke to conduct an open-ended search into Lowe's whereabouts. The information available to Berke was that the property was vacant and that Lowe had moved. Further, Apex did check city and suburban phone directories and voter registration records in order to find another address for Lowe and Austin, but was unable to find an address other than the subject property address. Under the circumstances, we cannot say that Berke was required to conduct further investigation or that Lowe was constitutionally entitled to a more diligent inquiry.

Finally, we note that the public guardian argues that this court erred in its prior opinion in rejecting the public guardian's challenge to the adequacy of Apex's diligent inquiry, without addressing the merits of that argument, on the basis that a circuit court's diligent-inquiry finding cannot be challenged in a section 2–1401 petition. The public guardian contends that its challenge to the adequacy of Apex's diligent inquiry is authorized by section 22–45(4) of the Code. The public guardian states that this court apparently read section 22–45(4) as allowing relief only when a party can show both that the tax purchaser failed to make a diligent inquiry and that the tax purchaser failed to comply with statutory publication requirements. The public guardian argues that section 22–45(4) should be read disjunctively to permit relief to a property owner who can show either a lack of diligent inquiry or a lack of adequate notice by publication.

-18-

We decline to address the public guardian's argument concerning section 22–45(4), as our reconsideration of this case is limited to the Supreme Court's decision in *Jones*. Consequently, our reconsideration of Apex's diligent inquiry in attempting to serve Lowe is limited to whether Apex's notice to Lowe satisfied due process under *Jones*.

After considering this case in light of the United States Supreme Court's decision in *Jones*, we find that this case does not present facts establishing that Lowe was denied her due process right under *Jones* to adequate notice prior to the deprivation of her property. For that reason, we adhere to our former disposition in this cause and affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*


JUSTICES KARMEIER and BURKE took no part in the consideration or decision of this case.


JUSTICE KILBRIDE, dissenting:

I respectfully dissent from the majority opinion because I disagree with its interpretation and application of the Supreme Court's opinion in *Jones v. Flowers*, 547 U.S. 220, 164 L. Ed. 2d 415, 126 S. Ct. 1708 (2006). *Jones* stands for the proposition that a party with the duty to provide notice to a property owner must "take additional reasonable steps to attempt to provide notice" when "it is practicable to do so." *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713. In explaining the types of steps necessary to fulfill this requirement, the Court reiterated the long-established standard cited in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). Under that standard, to comport with due process, notice " 'must be such as *one desirous of actually informing the absentee might reasonably adopt* to accomplish it.' " (Emphasis added.) *Jones*, 547 U.S. at ___,164 L. Ed. 2d at 427, 126 S. Ct. at 1715, quoting *Mullane*, 339 U.S. at 315, 94 L. Ed. at 874, 70 S. Ct. at 657. I do not believe that standard was met in this case.

As the majority correctly notes (slip op. at 13-14), the facts in *Jones* differ from those in this appeal. Those differences, however,

only serve to underscore the need for heightened due process protections for property owners like Lowe, who face imminent danger of forfeiting all interest in their homes without an opportunity to object. In *Jones*, the Court addressed the sufficiency of Arkansas' notice requirements *prior to* a tax sale. *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713. Slip op. at 13-14. Here, the issue involves this state's section 22–10 notice requirements *after* a tax sale has occurred but *before* the owner is actually stripped of title to the property. Slip op. at 14. Without the section 22–10 notice, Lowe was at risk of irretrievably losing *all* interest in her home without being given an opportunity to make a timely objection or redeem the property.

Furthermore, the property owner in *Jones* was mentally competent and simply neglected to ensure that the taxes on the property were paid and that the mailing address in the tax records was updated. Lowe, on the other hand, has a long history of serious mental health problems and was undeniably incompetent when the section 22–10 notices were given. Moreover, her permanent mailing address in the tax records was correct because she continued to reside at the property except when she was hospitalized for mental-health treatment.

Illinois' section 22–10 "Take Notice" is designed to inform the owner that property has already been sold at a tax sale and that title will transfer to the tax purchaser if the property is not redeemed by paying the back taxes before the expiration of the redemption period. 35 ILCS 200/22–10 (West 1994). Thus, this notice provides the *final opportunity* for the property owner to preserve *any interest* in the property. Due to the magnitude and imminence of the risk of complete forfeiture, I believe that due process mandates even more stringent notice requirements than those required *before* the sale of the property. A heightened notice standard is justified when the parties' interests are balanced, with the imminent, irreversible loss of title to a home or other property carrying substantial weight. See *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657 (explaining that the specific test for the sufficiency of notice depends on the balance between the interest of the individual being protected by the due process clause and the state's interest). See also *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 427, 126 S. Ct. at 1715 (quoting

*Mullane)*. Indeed, our legislature has deemed it appropriate to enact more stringent statutory notice requirements in the postsale context than in the presale context. Compare 35 ILCS 200/21–110, 21–115, 21–135 (West 1994) with 35 ILCS 200/22–5, 22–10, 22–15, 22–20, 22–25 (West 1994).

There is, however, one significant factual similarity between this case and *Jones*. In both instances, after it became apparent that the property owner had not received the statutory notice, the party obliged to provide notice "did–nothing." *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 430, 126 S. Ct. at 1718. The Court in *Jones* concluded that due process necessitated "additional reasonable steps to notify [the property owner], if practicable to do so." *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 430, 126 S. Ct. at 1718.

More specifically, the *Jones* Court repeatedly noted the principle that due process mandates notice " 'such as *one desirous of actually informing the absentee might reasonably adopt* to accomplish it.' " (Emphasis added.) *Jones*, 547 U.S. at ___, ___, ___, ___, 164 L. Ed. 2d at 427, 428, 433, 435, 126 S. Ct. at 1715, 1716, 1721, 1722, quoting *Mullane*, 339 U.S. at 315, 94 L. Ed. at 874, 70 S. Ct. at 657. Here, it is difficult to imagine that someone "desirous of actually informing" Lowe of the impending loss of her property would find it unreasonable or "impracticable" to call the post office to inquire about the letter carrier's notation on the returned certified mail envelope addressed to Lowe stating that she was "hospitalized." While this standard conflicts with the inherently adverse interests of tax purchasers, who rationally wish to obtain their tax deeds with the least possible effort and expense, constitutional due process standards do not exist for the benefit of the party intent on taking possession of another's property. See *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657. See also *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 433-34, 126 S. Ct. at 1721 (noting that the state has far less incentive to provide proper notice to property owners before taking actions adverse to them than it has to secure the revenue obtained from the taking). Fundamental due process safeguards are designed to provide property owners with the right to be heard. Due process entails the right to present objections and not be unwittingly stripped of property. This right has little meaning if the owner is not informed of the pending action and given the opportunity to object. See *Greene v.*

-21-

*Lindsey*, 456 U.S. 444, 449-50, 72 L. Ed. 2d 249, 254-55, 102 S. Ct. 1874, 1877-78 (1982).

Moreover, while due process does not demand *actual* notice to the property owner (*Dusenbery v. United States*, 534 U.S. 161, 170, 151 L. Ed. 2d 597, 606, 122 S. Ct. 694, 701 (2002)), the notice provided must be "reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (emphasis added) (*Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657). Here, the circumstances required Apex to follow up on the letter carrier's notation that Lowe was hospitalized. Only by following up on that information would the notice provided be "reasonably calculated" to afford Lowe notice "under all the circumstances" known to Apex at the time. The arguably conflicting information suggesting that Lowe had moved (see slip op. at 17) did not negate the relevance of the additional information on the envelope to Apex's duty to provide notice sufficient to satisfy due process. The duty to provide due process required the notice given to be "reasonably calculated, under *all* the circumstances, to apprise" Lowe of the action. (Emphasis added.) *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657. See slip op. at 16-17.

Similarly, ignoring information stating that the property owner is hospitalized does not comply with Apex's statutory duty under section 22–15 (35 ILCS 200/22–15 (West 1994)). Section 22–15 mandates that a tax purchaser exercise "diligent inquiry and effort" in finding the property owner and serving a section 22–10 notice. 35 ILCS 200/22–15 (West 1994). The plain and ordinary meaning of "diligent" is "characterized by steady, earnest, attentive, and energetic application and effort in a pursuit." Webster's Third New International Dictionary 633 (1993). Under this definition, Apex's failure to do *anything* after being informed that Lowe was hospitalized cannot reasonably be regarded as even "diligent inquiry and effort" to locate and serve Lowe.

Nor does the mere possibility that Apex's inquiries at the post office may have been unsuccessful in obtaining information about Lowe's location or mental-health status fulfill its due process duty to at least *attempt* to provide notice based on *all* available information. *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713-14

(citing *Dusenbery*, 534 U.S. at 170, 151 L. Ed. 2d at 606, 122 S. Ct. at 701, and *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657). See slip op. at 17. Surely due process does not allow the selective acknowledgment of information minimizing the tax purchaser's duty of notification and the complete disregard of other available information requiring the "additional reasonable step" of simply inquiring about the notation at the post office. See *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713. Due process is intended, after all, to provide property owners with a reasonable opportunity to protect their interests. See *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657. The goal of due process is not to minimize the notification burden placed on a tax purchaser.

Finally, requiring Apex to inquire about the letter carrier's notation at the post office does not constitute the type of "open-ended search" rejected by the *Jones* Court. *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 432, 126 S. Ct. at 1719. Apex would initially be required to take the limited step of contacting the post office to inquire about the notation on the returned certified mail envelope indicating that Lowe was hospitalized. Apex may or may not be required to take other reasonable and practicable steps to follow up on any subsequent findings. *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 426, 126 S. Ct. at 1714 (quoting its explanation in *Walker v. City of Hutchinson*, 352 U.S. 112, 115, 1 L. Ed. 2d 178, 182, 77 S. Ct. 200, 202 (1956), that "the 'notice required will vary with circumstances and conditions' "). Regardless of the outcome of its inquiry, however, Apex would not be obliged to scour local hospitals in an open-ended search for Lowe.

Thus, because "[u]nder the circumstances presented here, additional reasonable steps were available" to Apex, I believe it failed to satisfy its due process obligations. *Jones*, 547 U.S. at ___, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713. I would reverse the appellate court judgment and remand for further proceedings. Therefore, I respectfully dissent from the majority opinion.