2015 IL App (1st) 133693
No. 1-13-3693
Opinion filed May13, 2015

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF COOK COUNTY ILLINOIS, for Order and Judgment of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for the Year 2007 and Prior Years (TCF Bank, and Jose and Minerva Negron, Petitioners-Appellants v. Community Partners, LLC and FNA Cardinal 09, LLC, Respondents-Appellees). | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County.<br><br>No. 2011 COTD 4316<br><br>The Honorable Robert W. Bertucci, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    The circuit court of Cook County granted Community Partners, LLC, a tax deed to property owned and occupied by Jose and Minerva Negron. (FNA Cardinal 09, LLC, had obtained a certificate of purchase and assigned it to Community Partners.) Despite FNA's attempts at service, the Negrons never received notice of the tax deed proceeding, and they, along with TCF National Bank, which held a mortgage on the property and was served with notice, filed a petition to vacate the order under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2012)). The petition alleged the tax deed was procured

through fraud under section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2012)), constituted a taking in violation of their constitutional rights to due process under article IX, section 8 of the Illinois Constitution (Ill. Const. 1970, art. IX, § 8), and was an illegal eviction under the forcible entry and detainer provisions of the Code (735 ILCS 5/9-101 to 9-321 (West 2012)). FNA and Community Partners filed a motion to dismiss the petition to vacate, which the trial court granted. The Negrons and TCF contend the trial court erred in finding that the tax deed was not procured through fraud because the court would not have issued the tax deed if it had known that: (i) the Negrons were living in the house and had not been personally served with notice that the property had been sold for delinquent taxes; and (ii) TCF Bank was served notice at a branch in Chicago, which was not the address listed in the mortgage documents. The appellants also contend that because they were not personally served notice of the tax deed proceeding, the order granting a tax deed violated their due process rights under the Illinois and United States Constitutions.

¶ 2        We affirm. The trial court did not err in dismissing the section 2-1401 petition, because no grounds existed for a fraud finding as nothing in the record suggests Community Partners acted with the intent to deceive the appellants. Moreover, the trial judge stated that when he entered the order granting the tax deed, he knew the Negrons were living in the house and had not been personally served with notice of the tax sale. FNA also did not violate the Negrons' due process rights because, although they were not personally served, the notice was reasonably calculated, under the circumstances, to apprise them of the tax deed proceeding and afforded them an opportunity to present their objections.

¶ 3                                            BACKGROUND

¶ 4          In 1990, Jose and Minerva Negron purchased a single-family home at 6434 S. Sacramento Avenue, Chicago. The Negrons executed two notes and mortgages in favor of TCF National Bank—one in 2004 and one in 2007. Both mortgages were recorded with the Cook County recorder of deeds. The Negrons resided in this home.

¶ 5          On July 20, 2009, Elm Limited, LLC, purchased the delinquent 2007 general real estate taxes on the property in the amount of $825.49 and was issued a certificate of purchase. On March 1, 2011, Elm Limited, LLC, assigned the certificate of purchase to FNA Cardinal 09, LLC. On December 13, 2011, FNA filed a petition for a tax deed and extended the period of redemption to June 8, 2012. Thus, the notices to the owner and interested parties required by sections 22-10, 22-15, and 22-25 of the Property Tax Code (35 ILCS 200/22-10, 22-15, 22-25 (West 2012)) had to be filed between December 8, 2011 and March 8, 2012, which is referred to as the "notice serving period."

¶ 6          FNA conducted a LexisNexis Accurint database search that revealed a current address for the Negrons at 4820 S. Keeler Avenue, Chicago. Thus, FNA directed the clerk of the circuit court to send the take notice under section 22-25 of the Property Tax Code (35 ILCS 200/22-25 (West 2012)) by certified mail to the Keeler Avenue address. Certified mail service was attempted on December 21, 2011, but the mailings were returned as unclaimed. The sheriff also sent the notice to Jose and Minerva Negron by certified mail to the Keeler address. The postal carrier unsuccessfully attempted delivery on four occasions—January 24, 2012, January 29, 2012, February 9, 2012, and February 23, 2012. The certified mail envelope for the first three attempts of service states, "Notify sender of new address 6434 S. Sacramento Ave., Chicago, IL 60629."

¶ 7    FNA directed the clerk of the court to deliver the tax notices by certified mail to Jose and Minerva Negron at the Sacramento Avenue address. A postal carrier attempted to deliver the certified mailings at that address on December 20, 2011, December 28, 2011, and January 7, 2012. Those mailing were returned to the sender unclaimed. FNA also directed the clerk to send a take notice by certified mail to the general occupant of the house at the Sacramento Avenue address. The postal carrier attempted to deliver that take notice on the occupant on December 20, 2011, December 28, 2011, and January 7, 2012, but it was returned to sender as unclaimed.

¶ 8    On December 16, 2011, FNA delivered take notices to the Cook County sheriff to be personally served under section 22-15 of the Property Tax Code (35 ILCS 200/22-15 (West 2012)). On January 7, 2012, the sheriff attempted to personally serve notice on Jose Negron and Minerva Negron individually at the Sacramento Avenue address, but service was not obtained and the affidavits of service indicate "no contact" with either party. The sheriff again attempted personal service on the Negrons at the Sacramento Avenue address on March 7, 2012, but was not successful. On both affidavits, the sheriff indicated that the house was vacant, as the reason why service was unsuccessful. The sheriff then sent the take notice individually to Jose and Minerva Negron at the Sacramento Avenue address on January 12, 2012, January 16, 2012, January 26, 2012, February 23, 2012, February 28, 2012, and March 8, 2012.

¶ 9    FNA also directed the sheriff to personally serve the Negrons with the take notice at the Keeler Avenue address. The sheriff attempted service on January 7, 2012, but service was not obtained and "no contact" was noted on both affidavits of service. The sheriff also unsuccessfully attempted personal service on Jose Negron on March 4, 2012, and on Minerva Negron on March 7, 2012, at the Keeler address. The sheriff indicated "no contact" on both affidavits of service as the reason why service was not successful.

¶ 10  FNA also directed the sheriff to personally serve a take notice on the "general occupant" at the Sacramento Avenue address, and the sheriff attempted service on January 7, 2012, and March 7, 2012, but was unsuccessful. The sheriff indicated "vacant hse" on the affidavit. The sheriff also sent the take notice by certified mail to the general occupant of the property. The postal carrier attempted to deliver the notice six times, on January 13, 2012, January 18, 2012, January 23, 2012, February 23, 2012, February 28, 2012, and March 8, 2012, but each time the notice went unclaimed. Thus, although FNA, through the sheriff, twice attempted to serve the Negrons at the Sacramento Avenue address and the Keeler address, the Negrons were never personally served with notice, nor was there evidence that they were served notice by certified mail.

¶ 11  FNA published notice of the tax sale in the Chicago Daily Law Bulletin on February 27, 2012, February 28, 2012, and February 29, 2012.

¶ 12  On December 28, 2011, the sheriff served notice on TCF National Bank at a branch located at 29 E. Madison Street, Chicago, by serving Breanna Foster, who was authorized to accept service on the bank's behalf. (The appellees acknowledge the loan documents provided for service to be made at TCF's consumer lending department in Lombard, Illinois, but they contend that Illinois law does not require service on a corporation at the location listed on a mortgage or other document.)

¶ 13  The property was not redeemed from the tax sale, and on June 26, 2012, FNA filed its application for an order directing the county clerk to issue a tax deed. On August 15, 2012, FNA conducted an *ex parte* prove-up hearing. At that hearing Audrey Myers, counsel for FNA, stated, in part, that "the notices sent pursuant to section 22-10 of the Property Tax Code were served to all interested parties in this case." The trial judge took the matter under advisement.

¶ 14        After the hearing, FNA assigned its ownership interest in the certificate of purchase to Community Partners, LLC. On October 26, 2012, the circuit court entered an order substituting Community Partners as the petitioner in the tax deed and entered an order directing the county clerk to issue a tax deed to Community Partners. The tax deed was recorded with the Cook County recorder of deeds, and on December 19, 2012, Community Partners evicted the Negrons from the property.

¶ 15        On July 23, 2013, TCF Bank and Minerva Negron filed an amended petition under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2012)) to vacate, alleging the tax deed was procured through fraud or deception because: (i) FNA's attorney erroneously told the court that all interested parties had been served even though the Negrons never received service, and (ii) FNA served notice on TCF Bank at a branch in Chicago rather than in Lombard, Illinois, which was the address for service provided for in the mortgage documents. The petition also alleged the order granting a tax deed constituted a taking without notice that violated the Negrons' rights to due process under the Illinois Constitution (Ill. Const. 1970, art. IX, § 8), and that Community Partners violated the Forcible Entry and Detainer Act (735 ILCS 5/9-101 to 9-321 (West 2012)) by illegally evicting the Negrons from the house. (Jose Negron was later added as a party to the petition.)

¶ 16        FNA and Community Partners filed a joint motion to dismiss the petition under section 2-619 of the Code (735 ILCS 5/2-619 (West 2012)), which the trial court granted with prejudice. The court rejected the fraud argument, finding that at the prove-up hearing he took Myers' statement that all interested parties were served to mean that FNA had sent the proper notices and had directed the sheriff to serve all interested parties during the notice serving period, not that all interested parties had been actually served. The judge stated that in preparing for the

prove-up hearing he would have checked the electronic court file to determine whether service was made during the notice serving period and thus would have known that, although FNA properly attempted to serve the Negrons, they did not actually receive service. The court agreed with the petitioners that fraud is broadly defined in tax deed proceedings to include a failure to disclose facts that, if the trial court had known, may have resulted in a different decision. The court found, however, that in "recalling *** the facts *** the court relied on back then[,] the court does not believe there was fraud."

¶ 17    The court also rejected the argument that FNA's service on TCF Bank in Chicago rather than at the address listed on the mortgage was not proper and found that with regard to attempted service on the Negrons, "due process was complied with" given the two attempts by the sheriff, the numerous mailings, and the certified mailings that went unclaimed, which created a presumption that the notice required under the Property Tax Code was received. Appellants' motion to reconsider was denied.

¶ 18                                ANALYSIS

¶ 19    As a preliminary matter, we note that appellants' brief does not contain an appendix with a copy of the judgment appealed from, findings of fact or memorandum opinions issued by the circuit court, relevant pleadings, or a complete table of contents of the record on appeal as required by Illinois Supreme Court Rule 341(h)(9) (eff. Feb. 6, 2013) and Illinois Supreme Court Rule 342(a) (eff. Jan 1, 2005). Supreme court rules are not mere suggestions; they are rules to be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. "Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal." *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005). In addition, this court may strike an appellant's brief for noncompliance with Rule 341. See *People v. Thomas*, 364 Ill. App. 3d 91,

97 (2006). We note, however, that striking a brief or dismissing an appeal for failure to comply with supreme court rules is a harsh sanction. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). Thus, we will consider the merits of this appeal based on the brief presented, but we caution appellants' counsel to be more diligent in complying with the rules of our supreme court in the future.

¶ 20                                                             Fraud

¶ 21        A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 570 (2002). Affirmative matter "refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004). "The question on appeal is whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." (Internal quotation marks omitted.) *Krilich*, 334 Ill. App. 3d at 570. Our review of a dismissal under section 2-619 of the Code is *de novo*. *Id*. at 569.

¶ 22        Once the circuit court has issued a tax deed, under the Property Tax Code (35 ILCS 200/1-1 *et seq*. (West 2012)), it is incontestable except by direct appeal from the order directing the entry of the tax deed or by a section 2-1401 petition. 35 ILCS 200/22-45 (West 2012). Section 2-1401 provides that "[r]elief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section." 735 ILCS 5/2-1401(a) (West 2012). The party seeking to have the tax deed set aside bears the burden of proving the

invalidity of the tax deed. *Exline v. Weldon*, 57 Ill. 2d 105, 111 (1974). Relief under section 2-1401 is predicated on proof, by a preponderance of the evidence, of a defense or claim that would have precluded entry of judgment in the original action and diligence in both discovering the defense or claim and presenting the petition. *People v. Vincent*, 226 Ill. 2d 1, 7-8 (2007). A petition failing either legal or factual sufficiency should be dismissed. *Id*. at 8. Thus, taking as true its allegations, a petition will be dismissed if "it does not state a meritorious defense or diligence under section 2-1401 case law." *Id*. Like a complaint, the petition may be challenged by a motion to dismiss for failure to state a cause of action or if, on its face, it shows the petitioner is not entitled to relief. *Id*.

¶ 23     Section 22-45(3) of the Property Tax Code permits a section 2-1401 collateral attack on the issuance of a tax deed where there is "proof by clear and convincing evidence that the tax deed was had been procured by fraud or deception by the tax purchaser or his or her assignee." 35 ILCS 200/22-45(3) (West 2012). Generally, fraud in a tax deed proceeding has been defined as " 'a wrongful intent—an act calculated to deceive.' " *In re Application of the County Treasurer of Cook County,* 92 Ill. 2d 400, 405 (1982) (quoting *Dahlke v. Hawthorne Lane & Co.*, 36 Ill. 2d 241, 245 (1966)). More recently, however, the appellate court has more broadly defined fraud in tax deed proceedings to include "[t]he failure to inform the court of any facts that might change the court's ruling can amount to fraud for purposes of vacating tax deeds." *In re Application of the County Treasurer (HomeSide Lending, Inc. v. Midwest Real Estate Investment Co.*), 347 Ill. App. 3d 769, 781 (2004). In *HomeSide,* the court noted that because tax deed proceedings involve the government in taking the property of private owners of real estate, "[d]ue process concerns demand a special interpretation of the fraud requirement of section 22-45(3)." *Id.* at 780. In dismissing the appellants' section 2-1401 petition, the trial court acknowledged this

broader standard, stating "I agree that fraud is certainly very broad in these proceedings. *** [If] there are facts that if the court had known, the court may have entered a different decision. It doesn't have to be intentional on the party's part ***."

¶ 24     The appellants primarily rely on *HomeSide* to support their argument that the trial court erred in dismissing their section 2-1401 petition. In *HomeSide*, the homeowner's husband, who was listed on the mortgage but did not receive notice of the tax deed proceeding, filed a section 2-1401 petition to set aside the tax deed alleging, in part, that the tax purchaser procured the tax deed by fraud under section 22-45(3) of the Property Tax Code. The petitioner contended the tax purchaser falsely or erroneously represented to the trial court that all of the notices required by law had been given, that all of the occupants of the subject property had already been served, and that it was entitled to the issuance of a tax deed, and failed to inform the trial court that the petitioner, who had a potential interest as a probable occupant of the property, had not been served with notice. *HomeSide*, 347 Ill. App. 3d at 773. The trial court denied the petition finding, in part, that the petitioners failed to prove fraud within the meaning of section 22-45(3) of the Property Tax Code. *Id*. at 774. In reversing, the appellate court found that whether the tax purchaser's failure to inform the trial court of the homeowner's husband's interest was deliberate or an oversight, it amounted to fraud because the trial court's ruling might have been different had it known of that interest. *Id*. at 781.

¶ 25     Appellants contend that as in *HomeSide*, the tax purchaser engaged in fraud when its attorney, Audrey Myers, told the trial court at the *ex parte* prove-up hearing that "notices sent pursuant to section 22-10 of the Property Tax Code were served to all interested parties." Appellants assert that although notices were sent, they were never, in fact, served on the Negrons, who, despite FNA's efforts, never actually received notice. Appellants contend,

therefore, that regardless of whether attorney Myers intentionally made a false statement to the trial court, her statement, like the lawyer's statement in *HomeSide*, amounted to fraud, and thus, the trial court erred in dismissing their section 2-1401 petition. Further, appellants assert that FNA submitted several documents to the trial judge falsely stating that the house was vacant, when, in fact, the Negrons were living there at that time. Appellants contend that if the trial court had known at the prove-up hearing that neither of those statements was accurate, it likely would not have issued a tax deed.

¶ 26      Although this case is factually similar to *HomeSide*, an important distinction calls for a different result. At the hearing on petitioners' section 2-1401 petition, the trial judge stated when he entered the order directing the county clerk to issue a tax deed to Community Partners he knew that FNA had attempted to personally serve the Negrons by certified mail, sheriff's service, and regular mail, but had not been able to actually serve them. Specifically, the trial judge stated, "I did not believe [attorney Myers's statement] to mean that parties were actually served." Then, in discussing his procedures in tax deed proceedings, the judge stated:

> "I check the sheriff's returns [to] see how many times they went out***. I check certified mail. *** [I]n this case, you know, at least two attempts were made in the notice serving period to personally serve the Negrons and repeated certified mails by clerks and sheriffs [that] were unclaimed by them. So[,] it's not as if I took that to mean that they were actually served. So[,] the court wasn't buffaloed and I don't think that was the purpose of it, either. Because it didn't say, you know, we served everybody and let me recite to you that they were served on so and so date."

¶ 27      In short, the trial judge stated that he had prepped for the prove-up hearing and recalled the facts he relied on at that hearing in deciding to issue a tax deed, and he did not think there

was fraud, even in the broad sense. Thus, because appellants have not raised any issues the trial court was not aware of at the time it entered the order for a tax deed, no grounds exist for finding that those facts might change the court's rulings and thus, no fraud.

¶ 28        In their section 2-1401 petition, appellants also contend FNA fraudulently failed to disclose to the trial court that they served TCF National Bank at a branch in Chicago rather than at TCF's consumer lending department in Lombard, Illinois, which is the address listed on the mortgage documents. We again disagree. Section 2-204 of the Code of Civil Procedure provides that a "private corporation may be served *** by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State." 735 ILCS 5/2-204 (West 2012). Nothing in the Code of Civil Procedure or the Property Tax Code mandates that a lender be served notice at a location listed on a mortgage document. FNA served Breanna Foster, who was authorized to accept service on the bank's behalf. Thus, even if the trial court had known that TCF had been served in Chicago rather than at the address listed on the mortgage, it likely would not have changed the trial court's decision to issue the tax deed.

¶ 29                                B. Due Process

¶ 30        Next, appellants contend they were deprived of their interest in the property without due process of law under the Fourteenth Amendment to the United State Constitution (U.S. Const., amend. XIV) and article IX, section 8, of the Illinois Constitution (Ill. Const. 1970, art. IX, § 8), because they never received notice of the tax sale or the tax deed petition. They assert that interested parties whose names and addresses can be ascertained from the public record *must* receive notice of the proceedings that may deprive them of their property interest and that because they were not served notice the trial court erred in dismissing their section 2-1401 petition.

¶ 31    The Property Tax Code contains specific methods of notice to which a tax purchaser must adhere to obtain a tax deed. After a tax sale, the tax purchaser must deliver a notice to the county clerk to be given to the party in whose name the taxes were last assessed. 35 ILCS 200/22-5 (West 2012). This notice must be delivered to the county clerk within 5 months after the tax sale, and the county clerk must mail the notice within 10 days of receipt by registered or certified mail. *Id*. This section 22-5 "take notice" advises a party that his property has been sold for delinquent taxes, that redemption can be made until a specified date, and that a petition for tax deed will be filed by the tax purchaser if redemption is not made. *Id*.

¶ 32    The tax purchaser must send a second take notice to the owner, occupants, and interested parties not less than three months or more than five months before the expiration of the period of redemption. 35 ILCS 200/22-10 (West 2012). This section 22-10 take notice must give notice of the sale and the date of expiration of the period of redemption. 35 ILCS 200/22-10 (West 2012).

¶ 33    Service of the take notice may be made in one of three ways: (i) personally by the sheriff; (ii) by registered or certified mail with return receipt requested; and (iii) by three publications in a local newspaper. 35 ILCS 200/22-15, 22-20, 22-25 (West 2012). Also, within the time period for the second take notice (within five months but not less than three months before the redemption period expires), the tax purchaser may file a petition in the trial court requesting an order directing the county clerk to issue a tax deed to the subject property. *In re Application of the County Collector*, 225 Ill. 2d 208, 212 (2007) (*Lowe*). The tax purchaser will receive an order issuing a tax deed if the subject property is not redeemed and if the purchaser proves to the trial court that he or she strictly complied with the notice provisions in sections 22-10 through 22-25 of the Property Tax Code (35 ILCS 200/22-10 through 22-25 (West 2012)). *Lowe*, 225 Ill. 2d at 213.

¶ 34    Of relevance here is section 22-15 of the Property Tax Code. Appellants contend FNA violated their due process rights in serving the section 22-15 notice, because they never actually received notice of the tax sale. Section 22-15 provides, in relevant part:

"The purchaser or his or her assignee shall give the notice required by Section 22-10 by causing it to be published in a newspaper as set forth in Section 22-20. In addition, the notice shall be served by a sheriff *** of the county in which the property, or any part thereof, is located *** upon owners who reside on any part of the property sold by leaving a copy of the notice with those owners personally.

* * *

If any owner or party interested, upon diligent inquiry and effort cannot be found or served with notice in the county, then the person making the service shall cause a copy of the notice to be sent by registered or certified mail, return receipt requested, to that party at his or her residence, if ascertainable." 35 ILCS 200/22-15 (West 2012).

¶ 35    Contrary to appellants' contention, however, due process does not require actual notice before the government may take an owner's property. See, *e.g.*, *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Instead, notice must be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id*. (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). In *Jones*, before the property owner's taxes were sold, the Arkansas Commissioner of State Lands tried to notify the owner of the tax delinquency and his right to redeem by sending a certified letter to the owner of the property. *Jones*, 547 U.S. at 223. The certified letter was returned to the Commissioner as "unclaimed." (Internal quotation marks omitted.) *Id*. at 224.

More than two years later, the Commissioner mailed another certified letter to the owner in an attempt to notify him that his house would be sold if he did not redeem his taxes. *Id*. The taxes were not redeemed, and the property was sold. *Id*. The Supreme Court held that that the Commissioner's efforts to notify the property owner of the tax sale did not satisfy due process. *Id*. at 229. The Court stated that it did not "think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed." *Id*. The Court held that on receiving the returned form suggesting that Jones had not received notice that his property had been sold, the "State should have taken additional reasonable steps to notify Jones, if practicable to do so." *Id*. at 234. The Court then listed several reasonable steps the State could have taken, including sending the notice by regular mail so that a signature was not required or addressing the mail to occupant. *Id*. at 235.

¶ 36        Our supreme court's decision in *Lowe*, which reconsidered what constitutes "adequate notice" in a pending tax sale on remand from the United States Supreme Court in light of *Jones*, illustrates the type of effort a tax purchaser must make to satisfy due process requirements. In *Lowe*, Mary Lowe purchased her home in Chicago in 1977. *Lowe*, 225 Ill. 2d at 211. In 1993, she quitclaimed the property to herself and William Austin, who died the next year. *Id*. Taxes were paid on the home until 1992, when the assessment for 1991 became delinquent. *Id*. At a tax sale in 1993, the tax purchaser, Apex Tax Investments, Inc., acquired the property for $347.61, representing the past due taxes, interest, penalties, and fees. *Id*. at 213. On October 5, 1995, Apex filed a petition for a tax deed to the property. The redemption period expired on February 21, 1996, and when the taxes were not redeemed, Apex proceeded to an *ex parte* hearing. *Id*. at 214. At that hearing, Apex's attorney testified to the steps Apex took to comply with the statutory

notice provisions in sections 22-10 through 22-25 of the Property Tax Code. Apex performed a tract search, which indicted Mary Lowe and William Austin owned the property. Apex directed the sheriff to personally serve notice of the sale on Lowe, Austin, and " 'occupant' " at the subject property. In the returns of service, the sheriff indicated " '[h]ouse vacant per neighbors" and "MOVED." *Id.* The sheriff also sent a copy of the notice by certified mail to Lowe, Austin, and "occupant" at the property address, which were returned to the sheriff and stamped, " 'return to sender.' " *Id*. at 215. The returned envelope addressed to Austin included a handwritten notation " 'deceased,' " and the envelopes addressed to Lowe and to " 'occupant' " included the handwritten notation " '[p]erson is [h]ospitalized.' " *Id*. at 214-15

¶ 37      In addition to the attempts to directly notify Lowe and Austin, Apex personally served notice on a bank holding a recorded mortgage on the property and successfully mailed a copy of that notice to the law firm that had prepared the 1993 quitclaim deed. *Id*. at 215-16. Apex officials also testified that the company had attempted to locate current addresses for both Lowe and Austin by checking city and suburban phone books, as well as voter registration records. *Id*. at 216. Apex hired an investigator who testified that he personally visited the property in late fall 1995 and that the house appeared to be uninhabited with no furniture visible through the living-room window. The investigator also testified that a neighbor told him that no one was currently living there. *Id*.

¶ 38      On this evidence, the circuit court issued a tax deed to Apex in May 1996, and Apex sold the property to a third party in early December 1996. *Id*. In September 1997, two of Mary Lowe's sons filed an action to restore title to the property. *Id*. at 217. Their petition asserted that their mother had been in and out of mental institutions for decades and, specifically, that she had been in a mental health facility from August 26, 1995 through December 17, 1996. *Id*.

¶ 39     Because the petition indicated that Mary Lowe was mentally disabled, the court appointed the Cook County public guardian to represent her interests in the proceedings. *Id*. The guardian established that the postal carrier made the notations on the returned notices, and the postal carrier testified that she had known where Mary Lowe was hospitalized but was precluded by postal regulations from indicating on the envelope more than simply "[p]erson is hospitalized." (Internal quotation marks omitted.) *Id*. at 218. Thus, the public guardian argued that if Apex had made inquiries of the postal carrier, the company would have been able to locate Mary Lowe and thus provide actual notice of the tax deed proceedings.

¶ 40     On the initial appeal, the supreme court rejected the guardian's arguments and held that the efforts at notice were constitutionally adequate. The guardian then sought review by the United States Supreme Court, which remanded the case following its decision in *Jones*. After additional briefing to address *Jones*, the Illinois Supreme Court, on further consideration, reaffirmed its initial decision, both distinguishing *Jones* factually and concluding that Apex's efforts to serve notice on Lowe sufficiently met the additional steps under *Jones* and, in fact, had "exceeded those suggested by the *Jones* Court as reasonable." *Id*. at 229. The court noted that, unlike in *Jones*, where the state did nothing for two years after its notice to Jones was returned unclaimed, Apex "did take numerous additional steps to notify Lowe that her property had been sold and that a petition for tax deed had been filed." *Id*. at 228. The court rejected the argument that Apex was required to perform an "open-ended search" for Lowe's whereabouts given that the return of service indicated the property was vacant and the owner had moved, and the purchaser had checked city and suburban phone directories and voter registration records. *Id*. at 231. The court concluded that under those circumstances, Apex need not conduct a more thorough investigation and Lowe was not constitutionally entitled to more diligent inquiry. *Id*.

¶ 41      Appellants suggest that under *Jones*, FNA should have done more to ensure that the Negrons received actual notice of the tax deed proceeding and their right to redeem and that the sheriff's two attempts at service and the unclaimed certified and regular mailing did not satisfy constitutional due process. We disagree and find that FNA's attempt to notify the Negrons of the tax sale were sufficient because they were reasonably calculated, under all the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections. FNA's efforts at serving notice on the appellants were more closely analogous to the numerous steps taken in *Lowe* than those in *Jones*, where the tax purchaser simply sent one certified letter to the owner at the property address which went unclaimed. FNA conducted a tract search to determine the name of the owners of the property and conducted a LexisNexis Accurint database that indicated that the Negrons resided at 4820 S. Keeler Avenue. At FNA's direction, the sheriff tried but was not able to serve the Negrons at the Keeler address on January 7, 2012, on Jose Negron on March 4, 2012, and on Minerva Negron on March 7, 2012. The Negrons contend that notice served at the Keeler address to be irrelevant to the due process inquiry because they were living at 6435 S. Sacramento Avenue at that time. But the sheriff also tried, unsuccessfully, to serve notice on the Negrons at the Sacramento Avenue address on January 7, 2012 and March 7, 2012. FNA also directed the sheriff to send notice of the sale to the Negrons by certified mail at both addresses. Delivery of the certified mail was attempted on January 11, 2012, January 12, 2012, and February 22, 2012, but they were returned unclaimed.

¶ 42      Although, as in *Jones* and *Lowe*, none of the steps FNA took in trying to give notice to the Negrons were successful, they were reasonably calculated to apprise them of the tax deed proceeding. Thus, the trial court did not err in dismissing the section 2-1401 petition on due process grounds.

¶ 43    We also note, as the trial court did, that appellants' interpretation of the notification provisions of the Property Tax Code, *i.e*., that a tax purchaser must ensure that a property owner receives actual notice, is impractical and would, in essence, permit an owner occupant to prevent a tax deed petitioner from ever obtaining a tax deed by simply avoiding personal service. As the trial court stated, under this reading of the statute, "[T]he sheriff can go out ten times. And the people could sit there and the doorbell is ringing and make faces at the sheriff and not be served. And the sheriff goes up 20 times, 50 times, and they can stand there, laugh at the sheriff, not open their door, and then someone cannot get a tax deed?" In addition, appellants' contention would make the Act's publication provision a meaningless gesture, contrary to a general rule of statutory construction. *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670 (2005) (a statute should be construed, if possible, so that no part is rendered superfluous or meaningless). Neither the statute nor the due process provisions of the United States and Illinois constitutions require the interpretation of appellants.

¶ 44                              CONCLUSION

¶ 45    While we recognize that this result may seem rather harsh, we can find no basis for concluding that appellees engaged in fraud in acquiring the tax deed or violated appellants' due process rights as those rights have been enunciated by the United States and Illinois Supreme Courts. Accordingly, we affirm the trial court order dismissing, with prejudice, appellants' section 2-1401 petition.

¶ 46    Affirmed.