2021 IL App (1st) 180909-U
No. 1-18-0909
Order filed June 28, 2021

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1)

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BARRY RING | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Plaintiff-Appellant/Cross-Appellee, | ) | |
| | ) | |
| | ) | No. 15 L 005404 |
| v. | ) | |
| | ) | The Honorable |
| RICHARD SCHENCKER, Individually and | ) | Thomas R. Mulroy |
| d/b/aRICHARD L. SCHENCKER, LTD. and | ) | Judge Presiding. |
| RICHARD L. SCHENCKER, Attorney and | ) | |
| Counselor, | ) | |
| | ) | |
| Defendant-Appellee/Cross-Appellant.) | | |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justice Coghlan concurred in the judgment. Justice Hyman specially concurred.

## ORDER

¶ 1    *HELD*:    The manifest weight of the evidence sufficiently supports the trial court's finding that Plaintiff-Appellant failed to prove damages due to Defendant-Appellee's alleged breach of duties. The trial court did not abuse its discretion when it imposed sanctions against Plaintiff-Appellant under Rule 137 and limited the award to fees for the trial and posttrial proceedings.

¶ 2        Barry Ring sued Richard Schencker for legal malpractice, alleging that Richard divulged Barry's secrets to attorneys working against Barry in Barry's divorce litigation. The trial court entered judgment in favor of Richard after a bench trial, and imposed sanctions on Barry under Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff.)). In his appeal, Barry argues the court relied on evidence stricken from the record, the court impermissibly restricted expert testimony, and the court's findings are contrary to the manifest weight of the evidence. Richard cross-appeals, arguing that the court awarded insufficient fees. We find that the court did not rely on the stricken evidence, Barry did not show prejudice from the restriction on expert testimony, and the evidence sufficiently supports the court's finding that Barry failed to prove Richard's actions caused any damages. On the cross-appeal, we find that the court did not abuse its discretion in the imposition of the sanction the court chose.

¶ 3                                    I. BACKGROUND

¶ 4        Barry Ring and Carol Schencker signed a prenuptial agreement and married in 2009. For several business transactions, Carol's father, Richard Schencker, acted as Barry's attorney and as attorney for business entities Barry created. Carol filed a complaint for dissolution of the marriage in May 2013. Richard immediately notified Barry that Richard would no longer serve as Barry's attorney.

¶ 5        Carol filed a motion for a temporary restraining order (TRO) to prevent Barry from hiding his assets. She alleged,

    "on June 21, 2013, *** Barry depleted the parties' only joint checking account and deliberately cut Carol off from credit cards which she historically relied on in order to pay expenses for herself and the parties' two minor children. Further, Barry is attempting to

take out a $1.1 million mortgage on the parties' marital residence claiming that he needs the funds to expand his medical business.***

Barry has repeatedly threatened Carol that he is 'taking all of our money and putting it into the business and he will make sure that all of the money is put into the business.' Barry has also threatened that he would 'put himself out of business, close all of his businesses and be a stay-at-home dad' by claiming that he 'does not need a lot to live on.'

Within the last two weeks, Barry told Carol 'I will fuck you and your lawyer' and that it will be 'fun for me.'"

The divorce court entered an initial restraining order on June 25, 2013, modified first on July 3, 2013, and further modified in subsequent orders. Carol and Barry settled most of the financial issues in the divorce by March 2014.

¶ 6 In May 2015, before entry of the final judgment in the divorce case, Barry sued Richard for legal malpractice. Much of the complaint focused on Richard's role in helping Barry set up a corporation, Colvel Investments, LLC, to acquire real estate in Indiana that Barry intended to use for his practice as a doctor specializing in pain management. As part of Barry's plan to keep his intentions secret from potential competitors, Barry asked Carol to act as legal owner of Colvel, using her maiden name on documents for Colvel's incorporation and for Colvel's acquisition of real estate. According to Barry, despite Carol's role as owner, "everyone involved understood and agreed that [Barry] would remain in control of Colvel."

¶ 7 Barry alleged in his amended complaint:

"[Richard] disclosed confidential information about Barry and his business interests to Carol and the attorneys representing her in the Divorce.

3

\*\*\*

Included in the information Schencker learned as Barry's attorney and subsequently improperly disclosed over email was the equity in Barry's business interests, which Schencker additionally utilized in assisting Carol to prepare a Disclosure Statement listing Barry Ring's business interests to be filed in the Divorce.

Schencker also provided to Carol's attorneys in the Divorce information regarding negotiations he conducted as counsel on Barry's behalf regarding the acquisition of vacant property in Indiana. \*\*\*

Schencker even disclosed to Carol's attorneys certain legal and business strategies Barry used to deal with competitive entities \*\*\*.

Schencker advised Carol's divorce attorneys early in the divorce that Carol was involved in the ownership and control of Colvel and that this could be used to gain leverage against Barry. As a result, Carol's divorce attorneys used Carol's role with Colvel to obtain a $400,000 settlement payment for Carol in exchange for, among other things, ending any litigation over the ownership and/or control of Colvel."

¶ 8    The bench trial on the malpractice complaint began in February 2018, more than a year after the divorce court entered its final judgment. Expert witnesses for Barry testified that Richard's emails to Carol's attorneys showed that Richard violated his duties as Barry's attorney. Richard's own expert admitted that at least one email appeared to violate Richard's ethical duties to his former client. The trial court accepted the written statements of the parties as to their expert's opinions and limited the expert testimony at trial to cross-examination.

¶ 9      Enrico Mirabelli, the attorney who represented Barry in the divorce, testified that the original restraining order, entered on June 25, 2013, "pretty much locked up all of Dr. Ring's accounts and ability to do business \*\*\*. \*\*\* [T]he banks \*\*\* weren't allowing Dr. Ring to write checks." The modifications entered in July 2013 eased the restrictions and permitted Barry to pay his employees, "but his ability to mortgage, hypothecate, loan, transfer property, real estate was still tied up." The modified order "prevent[ed] Dr. Ring from proceeding with his plan to build on the property in Hobart, Indiana." Because of the continuing restrictions and Carol's extensive knowledge of Barry's real estate interests, Mirabelli worked to "[g]et the case settled on the property issue as quickly as possible." To that end, Mirabelli persuaded Barry to give Carol "a payment of 400,000 that was nowhere to be found in the prenup." Mirabelli said, "[I]f I don't have to deal with this TRO, I'm going to \*\*\* enforce his prenup the way it was written." Mirabelli clarified that the "payment was for the purpose of Carol being able to get a residence for her and the two daughters. It was to buy peace. It was to buy a settlement."

¶ 10      Jennifer Dillon Kotz, who represented Carol in the divorce, testified that Carol provided all the information that formed the basis for the temporary restraining order. Dillon Kotz explained:

> "It's not uncommon in a divorce case where at the beginning of the case, in particular in this case, Carol was cut off from her credit cards. I believe, the remaining amount of money in a joint account had been removed. There was also, I believe an attempt to mortgage a property. And so given the situation and it is a very short period of time, the safest thing to do was to do a temporary restraining order."

¶ 11    Barry testified that in July 2013, Richard said to Barry, "You don't want to F with me and my daughter. I know too much about your business practices." Richard testified that Barry "made it very clear in a rather vile way that he was going to make sure that Carol would have nothing. And then that he would go after me." Carol testified that Barry said, "I am going to fuck you and fuck your family, you fucking cunt." The court said, "I don't want to hear anymore of this." The court granted Barry's motion to strike Carol's testimony about the threat.

¶ 12    The court resolved the malpractice complaint in April 2018. The court said:

"Plaintiff stated numerous times that he was going to transfer assets to disadvantage Carol in the divorce case and he made it clear in a vile way that he was going to make sure that there were no assets for Carol to find so she would have nothing.

Plaintiff further said that he would go after Defendant and make sure that he had nothing. When Carol filed for divorce from Plaintiff, her lawyers filed an *ex parte* TRO proceeding because Plaintiff had threatened to ruin Carol, had cut Carol off from the use of her credit cards, had money removed from the parties' joint bank account and had attempted to mortgage a property. ***

Almost immediately after the entry of the TRO, Plaintiff's counsel had it modified to remove the restrictions on Plaintiff's business accounts. Thereafter the divorce court entered a preliminary injunction against Plaintiff which superseded the TRO. The preliminary injunction order does not enjoin any of Plaintiffs business financial accounts or real estate property. The TRO was filed in July and by August there was no order from

the divorce court enjoining Plaintiff from proceeding with his plans to develop the Colvel property.

\*\*\*

The Court found Plaintiff Barry Ring to be unbelievable and incredible. He was vague in his answers and not forthcoming or truthful.

\*\*\* Plaintiff \*\*\* failed to prove any damage resulting from the alleged disclosures. \*\*\*

\*\*\*There is no evidence that Defendant's acts caused the filing of the TRO; Carol's divorce attorney said it was her decision to file for a TRO. There was no evidence that Plaintiffs divorce counsel was unable to immediately defend and to modify the TRO or that this TRO was unusual or out of the ordinary in a divorce matter. There was no evidence that information from Defendant led to Plaintiff's business being interrupted or impaired.

\*\*\*The divorce lawyer testified that he encouraged Plaintiff to settle the divorce case because it would have cost more than the $400,000 settlement to litigate the case. The $400,000 settlement also ensured that his daughters would have a home to live in, would resolve the significant issues related to the prenuptial agreement, and would resolve every other property claim that Carol may have had."

¶ 13     The court entered a judgment in favor of Richard.

¶ 14     Richard then filed a motion for sanctions against Barry under Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff.)). Richard sought about $250,000 in attorney fees. In the order resolving

the motion, the court detailed its reasons for rejecting all of Barry's claims for damages. The court said:

> "The Court finds that Plaintiff produced no evidence that he was damaged by Defendant's alleged disclosure of confidential information, that Plaintiff knew he was not damaged, and thus that the case brought by Plaintiff was frivolous.
>
> The Court finds that Plaintiff Barry Ring's actions and conduct were the source of this frivolous complaint and thus sanctions him in the amount of $31,938 which represents the attorney's fees expended by Defendant at trial and in post-trial proceedings including prosecuting this motion for sanctions."

¶ 15 Richard filed a motion to reconsider the $31,938 in fees, which the trial court denied. Barry appeals from the judgment entered in favor of Richard on the complaint, and Richard cross-appeals from the award of fees.

¶ 16 II. ANALYSIS

¶ 17 A. Barry's appeal

¶ 18 On appeal, Barry argues the trial court (1) erred by considering stricken evidence when it found Barry not credible; (2) erred by limiting the courtroom testimony of experts to cross-examination; (3) made findings that were against the manifest weight of the evidence; and (4) abused its discretion in entering a sanction against Barry pursuant to Supreme Court Rule 137.

¶ 19 1. Stricken evidence

¶ 20 The court struck Carol's testimony about what Barry said when he threatened to impoverish her as revenge for the divorce. However, the court admitted into evidence, without objection,

Richard's testimony that Barry "made it very clear in a rather vile way that he was going to make sure that Carol would have nothing. And then that he would go after [Richard]." The evidence admitted at trial supports the court's finding that Barry "made it clear in a vile way that he was going to make sure that there were no assets for Carol to find so she would have nothing." The court also clarified that it found Barry not credible because "[h]e was vague in his answers and not forthcoming or truthful." We find that the trial court did not rely on stricken evidence when it found Barry not credible, but instead relied on evidence that was admitted without objection. In a bench trial, the trial court as the tier of fact is in a superior position to observe witnesses, judge their credibility, and determine the weigh testimony should receive. *Matros v. Commonwealth Edison Co.*, 2019 IL App (1st) 180907, ¶ 153, 434 Ill. Dec. 335, 363, 136 N.E.3d 83, 111. There is no evidence here that precludes deference to the trial court's credibility finding.

¶ 21                              2. Limitation of expert testimony

¶ 22        We review the court's evidentiary rulings for abuse of discretion. *Snelson v. Kamm*, 204 Ill. 2d 1 (2003). "[E]ven where an abuse of discretion has occurred, it will not warrant reversal of the judgment unless the record indicates the existence of substantial prejudice affecting the outcome of the trial." *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). "When a party seeks to have a reviewing court determine whether the trial court's evidentiary rulings improperly restricted the examination of a witness, the record must be clear regarding what the witness' testimony would have been." *Snelson*, 204 Ill. 2d at 138. Barry made no offer of proof as to what his experts would have said, beyond the written statements the court accepted into evidence, if the court had not restricted their testimony. We have no basis upon which to

9

conclude that the trial court prejudicially erred in depriving the plaintiff of the opportunity to examine his experts directly. See *Holder v. Caselton*, 275 Ill. App. 3d 950, 955 (1995).

¶ 23                                    3.Cause of damages

¶ 24        "To prevail on a legal malpractice claim, the plaintiff client must plead and prove that the defendant attorneys owed the client a duty of due care arising from the attorney-client relationship, that the defendants breached that duty, and that as a proximate result, the client suffered injury." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). "[D]amages in a legal negligence action are never presumed. Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately causes damage to the client." *Metrick v. Chatz*, 266 Ill. App. 3d 649, 654 (1994). The trial court found that Barry failed to prove that any of Richard's acts caused Barry to suffer damage. We will not reverse a judgment entered after a bench trial unless it is contrary to the manifest weight of the evidence. *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 147 (1975).

¶ 25        Barry contends that the TRO entered in the divorce case caused him to pay Carol $400,000 for the release of her claim on Colvel. Barry presented evidence that Richard breached his duties as Barry's former attorney by consulting with Carol's divorce attorneys and disclosing some of Barry's business plans, especially his plans for Colvel. Dillon Kotz testified that she decided to file a motion for a TRO because Barry cut off Carol's credit card accounts, removed all funds from a joint account, and tried to mortgage some of their shared property. Barry did not establish a causal connection between the information in Richard's emails and the imposition of the TRO. The trial court separately noted that Barry failed to establish any

damage due to the TRO, as the court lifted the more severe restrictions after a few days, and the remaining restrictions did not touch Barry's ability to buy and develop properties through Colvel. The court's finding that Barry failed to prove Richard's malpractice caused any damages is not contrary to the manifest weight of the evidence. We affirm the judgment entered in favor of Richard on Barry's complaint.

¶ 26                                B. Richard's cross-appeal

¶ 27                                1. Rule 137 sanctions

¶ 28    Richard contends that the trial court erred by refusing to award him all his attorney's fees for defense of Barry's claims against him. "The decision whether to grant Rule 137 sanctions lies with the sound discretion of the trial court, and we may not disturb its decision unless there is an abuse of that discretion." *Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1021 (2006). "After the trial court makes a determination as to the reasonableness of attorney fees and costs, that determination will not be disturbed on appeal absent an abuse of discretion." *Brubakken v. Morrison*, 240 Ill. App. 3d 680, 686 (1992).

¶ 29    A trial court's determination should set forth the factual basis for its result if this is to give reached deferential treatment. When reviewing a decision on a motion for sanction, this court must determine whether "(1) the trial court's decision was an informed one, (2) the decision was based on valid reasons that fit the case, and (3) the decision followed logically from the application of the reasons stated. [Citation.] The purpose of imposing the sanction is to prevent abuse of judicial process and punish a party who brings vexatious litigation predicated upon false statements." *Olsen v. Staniak*, 260 Ill. App. 3d 856, 863 (1994).

11

¶ 30     Here, the trial court heard expert testimony regarding Richard's violation of fiduciary duties. The experts concluded that Richard breached his duties as Barry's former attorney in some of the emails he sent to assist Carol's attorneys in the divorce litigation. The trial court found Barry's complaint against Richard frivolous because Barry knew he could not prove the breaches caused any damages. The court expressly limited the punitive sanction imposed under Rule 137 to "the attorney's fees expended by Defendant at trial and in post-trial proceedings including prosecuting this motion for sanctions." The court did not award the pretrial fees Richard sought. Because the alleged violation of fiduciary duties may have led reasonably to a search for recoverable damages, we find the trial court did not abuse its discretion by limiting the punishment to the cost of the trial and posttrial proceedings.

¶ 31                              2. Rule 375 Sanctions

¶ 32     Finally, Richard asks this court to sanction Barry, under Supreme Court Rule 375 (Ill. S. Ct. R. 375 (eff.)) for filing a frivolous appeal. "Supreme Court Rule 375 provides sanctions for frivolous appeals that are not taken in good faith. A reviewing court applies an objective standard to determine whether an appeal is frivolous." *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87. "The purpose of Rule 375(b) is to condemn and punish the abusive conduct of litigants and their attorneys who appear before us." *Sterling Homes, Ltd. v. Rasberry*, 325 Ill. App. 3d 703, 709 (2001). Although we agree with the trial court that Barry failed to prove that Richard's breach caused any damages, we do not find the appeal so frivolous as to warrant punishment, and we decline to impose sanctions under Rule 375.

¶ 33     Finally, we admonish Ring and his attorney that Illinois Supreme Court rules are mandatory, "not mere suggestions." *In re County Treasurer*, 2015 IL App (1st) 133693, ¶ 19.

Our supreme court has admonished that the "appellate and circuit courts of this state must enforce and abide by the rules of [the supreme] court." *People v. Salem*, 2016 IL 118693, ¶ 19. We also admonish that everyone appearing before this court must adhere to the Supreme Court rules governing appeals, and future violations will not be tolerated.

¶ 34                                    III. CONCLUSION

¶ 35        The trial court did not rely on stricken testimony when it found Barry not credible. Barry did not show any prejudice from the court's restriction of expert testimony in court to cross-examination. The manifest weight of the evidence sufficiently supports the finding that Barry failed to prove damages due to Richard's alleged breach of duties. The court did not abuse its discretion when it imposed sanctions against Barry under Rule 137, and the court did not abuse its discretion when it limited the award to fees for the trial and posttrial proceedings. Accordingly, we affirm the trial court's judgment.

¶ 36        Affirmed. Justice HYMAN, specially concurring:

¶ 37        I concur with the majority's decision to affirm the trial court. I write separately because I would grant Schencker's request for sanctions under Supreme Court Rule 375 (Ill. S. Ct. R. 375 (eff. Feb. 1, 1994)) for filing a frivolous appeal.

¶ 38                                    Frivolous Appeal

¶ 39        In his brief, Schencker asks for sanctions under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). This court may impose sanctions on a party or a party's attorney if "it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending

the appeal or other action is for such purpose." See *Bank of America, N.A. v Basile*, 2014 IL App (3d) 130204, ¶ 51. In deciding whether an appeal is frivolous we use an objective standard and ask ourselves: Would a reasonable prudent attorney acting in good have brought the appeal? See 34 Ill.2d R. 375(b), Committee Comments; *Parkway Trust & Bank Co.* v. *Korzen*, 2013 IL App (1st) 130380, ¶ 87. As the Seventh Circuit Court of Appeals once noted, "A frivolous appeal means something more to us than an unsuccessful appeal." *National Labor Relations Board v. Lucy Ellen Candy Division of F & F Laboratories, Inc.*, 517 F.2d 551, 555 (7th Cir. 1975).

¶ 40    The reviewing court has discretion in issuing sanctions. *Korzen*, 2013 IL App (1st) 130380, ¶ 87. And appropriate sanctions may include ordering the offending party to pay to the other party damages, the reasonable costs of the appeal, and the expenses incurred as a result of the appeal, including reasonable attorney's fees. See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994); *Korzen*, 2013 IL App (1st) 130380, ¶ 89.

¶ 41    A review of the record and the parties' brief leads to the conclusion that, like his trial court complaint, Ring's appeal was frivolous, as it was not reasonably well grounded in fact. Indeed, Ring's brief is replete with misstatements of fact, particularly in the section ironically titled, "Facts Proven At Trial." For instance, Ring contends Schencker's communications with his daughter's attorneys was the impetus for the TRO motion which is directly contradicted by testimony of his wife's attorneys who said (i) Schencker was not involved in the decision to file a TRO, (ii) it is not uncommon to file a TRO at the beginning of a divorce case, and (iii) a TRO was needed because Ring had cut off his wife's access to credit cards, drained a joint checking account, and expressed an intent to place a mortgage on property. The trial court

expressly concluded in its order "[t]here is no evidence that [Schencker's] acts caused the filing of the TRO.

¶ 42    Another example: Ring claimed as fact that the TRO "almost completely shut down [his] businesses and prevented [him] from moving forward with the development of the Colvel property" through 2014. But the trial court's express findings held otherwise. No evidence showed that information from Schencker led to Ring's "business being interrupted or impaired." Equally damaging, testimony from Ring's attorney confirmed that as of August 2013, the preliminary injunction order, which superseded the TRO, placed no restrictions on Ring regarding the Colvel property.

¶ 43    Ring claims, without supporting citation and contrary to the evidence introduced at trial, that Colvel was an issue in the divorce case only because Schencker brought it up. But this claim completely ignored his wife's involvement in the formation and operation of Colvel. Further, Ring provided details of the Colvel development to his wife and her father's relatives before the divorce was filed, refuting his contention that the information was confidential.

¶ 44    Ring's brief also misstates the trial court's findings regarding credibility. The trial court found Ring to be "unbelievable and incredible" because "[h]e was vague in his answers and not forthcoming or truthful." Yet, in his brief, Ring says the trial court's credibility determination was "based upon his anger and threats using foul language." Further, Ring repeats his false claim that he paid $400,000 to settle the divorce case so that he could re-acquire the Colvel property. Yet, the unrebutted evidence showed that the $400,000 was an unallocated payment to settle property issues arising out of the divorce case and for the purchase of a home for Ring's two young daughters to reside with their mother. Indeed, Ring's

own attorney testified that he encouraged Ring to settle the divorce case by giving his wife $400,000 to purchase a home, because it would have cost more than to litigate the case.

¶ 45    Ring's brief also omits key facts, including that Schencker prepared joint income tax returns for Ring and his wife, and that his wife was entitled to all financial information included in or used to prepare those tax returns.

¶ 46    This is just a sample of the misstatements or omissions of fact in Ring's brief that evidence the absence of a good faith belief in the essence of his case, namely that Schencker improperly disclosed confidential financial information to his wife or her attorneys and that the disclosures damaged Ring.

¶ 47    In addition to the absence of a factual basis for the lawsuit, Ring's appeal was motivated by a personal feud with Schencker, which began more than eight years ago. In 2013, when Schenker's daughter filed for divorce, Ring threatened Schencker that not only would he make sure his daughter had nothing, he would also "go after" Schencker, so that he too "would have nothing." When Schencker was unhappy with the settlement agreement in the divorce case, Ring made good on his threat by filing the malpractice complaint in 2015. After the trial court ruled in Schencker's favor three years later and sanctioned Ring for bringing claims he knew to be frivolous, Ring and his counsel appealed the underlying decision and the sanctions order, continuing to exact revenge against Schencker for another three years.

¶ 48    A party has a right to appeal, but that right should not be abused and does not justify the filing of a frivolous appeal. The trial court found Schencker's complaint was frivolous because he produced no evidence that he was damaged by Schencker's alleged disclosure of confidential information and further, he knew he was not damaged but filed the complaint

anyway. This appeal, premised on myriad of fact misstatements refuted by the record and motivated by a desire to get even, extended Ring's harassment of Schencker. As bad, it needlessly increased the cost of litigation. Unlike the majority, I believe sanctions are warranted under Rule 375(b) (eff. Feb. 1, 1994).

¶ 49    Moreover, I believe Ring's attorney should bear the costs of the sanctions. Attorneys are tasked with zealously representing clients. See Illinois Rule or Professional Conduct 1.3, cmt. 1 (eff. Jan. 1, 2010) ("A lawyer must *** act with *** zeal in advocacy upon the client's behalf). But zealousness following a client's wishes undermines a lawyer's duties to the adversary, the court, and the public. A lawyer also must exercise independent professional judgment and render candid advice to clients. See Ill. Rule of Professional Conduct 2.1, cmt. 1 (eff. Jan. 1, 2010) ("lawyer should not be deterred from giving candid advice by the prospect that the advice will be unpalatable to the client."). When a client asks an attorney to pursue a frivolous appeal, the attorney must advise the client against doing so and, if necessary, decline. Ring's attorney continued to advance Ring's false and vindictive claims for three years. Further, Ring's attorney knowingly advanced (or at a minimum failed to correct) false statements of material fact in his briefs despite Rule of Professional Conduct 3.3 (eff. Jan. 11, 2010) requiring candor before the court. So, I would order the attorney for Ring who prepared and filed the appeal to pay Schencker's attorneys the reasonable costs and fees resulting from the time and expense incurred in defending this appeal. See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994); *Korzen*, 2013 IL App (1st) 130380, ¶ 89.